```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

DESHAWN BANKS,                      :

                 Plaintiff,         :
                                         10 Civ. 4139 (RMB)(HBP)
    -against-                       :
                                         OPINION
LT. PINKER, Correction Officer,     :    AND ORDER
N.Y.S. Department of
Correctional Services,              :
Sing Sing, C.F., in his
individual capacity, et al.,        :

                 Defendants.        :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

By an application filed June 29, 2010 (Docket Item 4), plaintiff moves for pro bono counsel.[1] For the reasons set forth below, the motion is denied without prejudice to renewal.

The factors to be considered in ruling on a motion for pro bono counsel are well settled and include "the merits of

---

[1] In a civil case, such as this, the Court cannot actually "appoint" counsel for a litigant. Rather, in appropriate cases, the Court submits the case to a panel of volunteer attorneys. The members of the panel consider the case, and each decides whether he or she will volunteer to represent the plaintiff. If no panel member agrees to represent the plaintiff, there is nothing more the Court can do. See generally Mallard v. United States District Court, 490 U.S. 296 (1989). Thus, even in cases where the Court finds it is appropriate to request volunteer counsel, there is no guarantee that counsel will actually volunteer to represent plaintiff.

plaintiff's case, the plaintiff's ability to pay for private counsel, [plaintiff's] efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989).  Of these, the merits are "[t]he factor which command[s] the most attention."  Id.; accord Morgan v. Heart, 09 Civ. 8984 (CM), 2010 WL 1645118 at *1 (S.D.N.Y. Apr. 16, 2010) (McMahon, D.J.).  As noted by the Court of Appeals:

> Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention.  Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent.

Cooper v. A. Sargenti Co., supra, 877 F.2d at 174; see also Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997) ("'In deciding whether to appoint counsel . . . the district judge should first determine whether the indigent's position seems likely to be of substance.'"), quoting Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986).

> The Court of Appeals for the Second Circuit has
>
> stated in various ways the applicable standard for assessing the merits of a pro se litigant's claim.  In Hodge, [the court] noted that "[e]ven where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim,"

2

> and advised that a district judge should determine whether the pro se litigant's "position seems likely to be of substance," or showed "some chance of success." Hodge, 802 F.2d at 60-61 (internal quotation marks and citation omitted).  In Cooper v. A. Sargenti Co., [the court] reiterated the importance of requiring indigent litigants seeking appointed counsel "to first pass the test of likely merit."  877 F.2d 170, 173 (2d Cir. 1989) (per curiam).

Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204 (2d Cir. 2003).

Plaintiff's application does not establish any of the relevant factors.  It states only that plaintiff is not an attorney and that he requested representation from an unstated number of attorneys.  Moreover, even if I assume that plaintiff lacks the funds to retain an attorney and has diligently attempted to retain counsel on his own, it does not appear at this early stage that plaintiff's case has sufficient merit to warrant its submission to the Court's Pro Bono Panel.

As set forth in the Amended Complaint, plaintiff was formerly an inmate in the custody of the New York State Department of Correctional Services.  According to the plaintiff, false disciplinary charges were filed against him while he was incarcerated, and although he was initially found guilty of the charges, he was subsequently exonerated.  Plaintiff further alleges that as a result of the initial finding of guilt, he was

3

sentenced to six months in the Special Housing Unit at Sing Sing Correctional Facility and that his conditional release date was delayed.

To the extent plaintiff is alleging that false disciplinary charges violated a federally protected right, the claim appears to lack merit because "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997).

To the extent plaintiff's claim is based on his punitive segregation in Sing Sing's Special Housing Unit, his claim also appears to be problematic. Not all prison disciplinary proceedings implicate a liberty interest protected by the Due Process Clause.

> [T]he Supreme Court held in Sandin [v. Conner, 515 U.S. 472 (1995) that] a prisoner has the right to procedural due process before the deprivation of a liberty interest. 515 U.S. at 483-84, 115 S.Ct. 2293. Nevertheless, placement in restrictive confinement implicates a prisoner's liberty interest only if the confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S.Ct. 2293.

Williams v. Temple, 349 F. App'x 594, 595 (2d Cir. 2009), cert. denied, 131 S.Ct. 241 (2010). Whether the hardship imposed by a particular disciplinary confinement is "atypical and significant" turns on both the duration and conditions of the confinement,

among other things.  Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009).  Although a six-month period of confinement in a Special Housing Unit might be characterized as "'relatively long,'" it does not ipso facto implicate a liberty interest protected by the Fourteenth Amendment.

> [W]e have explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights.  See Sims v. Artuz, 230 F.3d 14, 23 (2d Cir. 2000); Colon v. Howard, 215 F.3d 227, 234 (2d Cir. 2000).  Instead, our cases establish the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed.  Where the plaintiff was confined for an intermediate duration -- between 101 and 305 days -- "development of a detailed record" of the conditions of the confinement relative to ordinary prison conditions is required.  Colon, 215 F.3d at 232; accord Sims, 230 F.3d at 23 ("[W]e have characterized segregative sentences of 125-288 days as relatively long, and thus necessitating specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant." (citations and internal quotation marks omitted)).  In those situations, a district court must "make a fact-intensive inquiry," Sims, 230 F.3d at 22, examining "the actual circumstances of SHU confinement" in the case before it without relying on its familiarity with SHU conditions in previous cases, Kalwasinski v. Morse, 201 F.3d 103, 106 (2d Cir. 1999) (per curiam).

Palmer v. Richards, 364 F.3d 60, 64-65 (2d Cir. 2004).  Plaintiff has not alleged any facts concerning the conditions of his confinement in the SHU and, therefore, the viability of a Due Process claim based on that confinement is questionable.

Finally, to the extent plaintiff is alleging a Due Process violation as a result of the delay of his conditional release date, the merits of the claim are also far from clear.

> In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme. See, e.g., Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 11-13, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); Berard v. Vermont Parole Board, 730 F.2d 71, 75 (2d Cir. 1984); Boothe v. Hammock, 605 F.2d 661, 663 (2d Cir. 1979). Neither the mere possibility of release, see id.; cf. Pugliese v. Nelson, 617 F.2d 916, 925 (2d Cir. 1980), nor a statistical probability of release, cf. Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), gives rise to a legitimate expectancy of release on parole. See, e.g., Berard v. Vermont Parole Board, 730 F.2d at 74-75.
>
> The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release.

Barna v. Travis, 239 F.3d 169, 170 -171 (2d Cir. 2001); accord Duemmel v. Fischer, 368 F. App'x 180, 182 (2d Cir. 2010); Howithi v. Travis, 06 Civ. 3162 (BSJ)(MHD), 2008 WL 7728648 at *10 (S.D.N.Y. Sept. 16, 2008) (Dolinger, M.J.)(Report & Recommendation), adopted at, 2010 WL 1685412 (S.D.N.Y. Apr. 23, 2010) (Jones, D.J.).

Accordingly, for all the foregoing reasons, plaintiff's application to have his case added to the list of cases circulated to the Court's Pro Bono Panel is denied without prejudice to renewal. Any renewed application should address why plaintiff

6

is unable to litigate this action without counsel and should detail the efforts he has made to secure counsel on his own. Most importantly, plaintiff should explain why his case has sufficient merit to warrant submission to the Court's Pro Bono Panel.

Dated: New York, New York
       November 24, 2010

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Mr. Deshawn Banks
Apt. 12-C
1390 5th Avenue
New York, New York  10026

Julia Hyun-Joo Lee, Esq.
Assistant Attorney General
State of New York
24th Floor
120 Broadway
New York, New York  10271